## Case No. 10,546.

### OPDYKE v. PACIFIC R.

[3 Dill. 55;[1] 8 West. Jur. 670.]

Circuit Court, E. D. Missouri. 1874.

CONTRACTS — RIGHT OF STRANGERS TO ENFORCE STIPULATION FOR THEIR BENEFIT IN CONTRACTS BETWEEN OTHER PERSONS—GUARANTY.

1. When one who is not a party to a written agreement, but who is the person to be benefited by a performance of stipulations therein, may maintain an action against the promissor, considered.

2. On demurrer, held, that if the facts alleged in the petition were true, the defendant had made itself liable for the payment of interest on bonds issued by another railroad company, containing a representation that the defendant had in consideration of a lease to it of the road of such company, guaranteed the payment of such interest.

[Cited in Ellerman v. Chicago Junction Ry. & Union S. Y. Co., 49 N. J. Eq. 217, 23 Atl. 297.]

On demurrer to the answer. The plaintiff [George Opdyke] brings this action at law to recover of the Pacific Railroad Company of Missouri the amount of seventy-three coupons for interest due Nov. 1st, 1873, upon that number of bonds, of the St. Louis, Lawrence & Denver Railroad Company. The action is brought upon the theory that the facts stated in the petition make the defendant

---

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

(the Pacific Railroad Company). liable by reason of a guaranty or promise for the benefit of each bearer of the bonds of the Lawrence Company, above named, to pay the interest thereon for the full period for which said bonds were to run. To understand the questions made by the demurrer to the answer, it is necessary to state the substantial parts of the pleadings.

The petition alleges that the defendant, the Pacific Railroad, is a railroad corporation, incorporated, organized and acting, and was so at the several times hereafter mentioned, under and by virtue of the laws of the state of Missouri, and particularly an act of the general assembly of the state of Missouri, entitled "An act to incorporate the Pacific Railroad" [Laws 1849, p. 219], approved March 12th, 1849. Plaintiff says that the St. Louis, Lawrence & Denver Railroad Company was, at the several times hereafter mentioned, a railroad corporation, duly authorized, organized and acting under and by virtue of the laws of the states of Kansas and Missouri, for the purpose of making, constructing, equipping and using a railroad extending from Pleasant Hill, in the state of Missouri, to Lawrence, in the state of Kansas. That at the time of the formation of said last named corporation for said purpose, the said defendant, the Pacific Railroad, was engaged in operating a railroad from St. Louis to Kansas City, Missouri, and that another railroad corporation named the Union Pacific Railroad Company, eastern division, commonly called Kansas Pacific Railroad Company, was engaged in operating a railroad from Kansas City, in Missouri, to Denver, in the territory of Colorado, and that the two railroads last named were, on and before November, 1870, being operated harmoniously and so as to contribute to each other's success. That the said St. Louis, Lawrence & Denver Railroad Company was organized for the purpose of making a new connection between said Kansas Pacific and said Pacific (commonly called Missouri Pacific) Railroads, and which road and the use of which was then and there expected by said Pacific Railroad Company of Missouri to be of great value and benefit to it. And plaintiff says that it was, by and between said St. Louis, Lawrence & Denver Railroad Company and said defendant, then and there known that a large sum of money would be essential to enable said St. Louis, Lawrence & Denver Railroad Company to build its said road, and that no sufficient security would or could be by said last named company given to enable it to negotiate or sell its bonds or evidence of indebtedness in the market. And plaintiff says that said defendant then and there, in view of the supposed advantage to accrue to it by the creation, construction and use of said railroad by said St. Louis, Lawrence & Denver Railroad Company, and to make a security sufficient to induce the purchase of the bonds of said last named company, and

in contemplation of the execution and issue of the bonds by said last named company for the sum of one million dollars, bearing interest at the rate of six per cent per annum in gold, payable semi-annually at the National Bank of Commerce in the city of New York, and expressly for the purpose of providing a fund sufficient to meet said interest, did heretofore, to-wit, June 14th, 1870, make and enter into a certain lease and contract with said St. Louis, Lawrence & Denver Railroad Company, in the words and figures following, to-wit:

"This lease and contract, made the fourteenth day of June, eighteen hundred and seventy, between the St. Louis, Lawrence & Denver Railroad Company, a corporation reorganized by consolidation under the laws of the state of Kansas and the state of Missouri, of the first part, and the Pacific Railroad Company, of Missouri, duly incorporated by the laws of the state of Missouri, of the second part, witnesseth: That the party of the first part, in consideration of the covenants and agreements of the party of the second part hereinafter mentioned and contained, and by them to be kept and performed, and of one dollar paid by the party of the second part to the party of the first part, has granted, leased and demised, and by these presents doth grant, lease and demise unto the party of the second part, and their successors, the whole of the railroad of the party of the first part as now located and hereafter to be built and constructed by the party of the first part from its terminus, to-wit, from the city of Pleasant Hill, in the county of Cass and state of Missouri, thence westwardly across the state line, upon the most direct and practicable route to its terminus at the city of Lawrence, in the county of Douglas and state of Kansas. say fifty-eight miles, more or less, making a junction with the Leavenworth, Lawrence & Galveston Railroad, at said last mentioned city, with all the lands, railways, rails, sidetracks, bridges, rights of way, depots, stations, turn-tables, water stations, station houses, and all other buildings and improvements, and appurtenances of every nature whatsoever, now enjoyed, held or owned, or which may hereafter at any time be acquired by said party of the first part for the purpose of operating said railroad. * * * * To have and to hold said demised railroad and premises as aforesaid to the Pacific Railroad Company, its successors and assigns, for and during the term of thirty years, from the first day of August, A. D. eighteen hundred and seventy-one (1871) or as much sooner as the said road shall be completed, delivered to, and accepted by said Pacific Railroad Company, ready for operation; and in consideration of the premises the parties hereto have respectively covenanted and agreed to and with each other for themselves, their respective successors and assigns in manner following. viz: 1st. That they, the party of the first part, shall furnish, provide and pay

for, when payment shall be required, all the right of way for the line of said railroad, one hundred feet in width, and all the land for station houses and all other buildings on the line of said railroad; shall also pay for all work to be done and materials to be used or furnished for use in or about the location or construction of said railroad or its appurtenances, and complete and deliver the same to the party of the second part, in good condition for operating and in all respects equal in its construction to the Pacific Railroad (of Missouri), and of a like gauge therewith. 2d. That the party of the second part and its assigns, shall and will at all times during the continuance of the hereby demised term, after the delivery and acceptance thereof, in good faith, work, use, manage, maintain and operate and keep in use and repair the said railroad of the party of the first part, with its appurtenances, and with such locomotives, cars and rolling stock as the said party of the second part shall deem to be necessary, reasonable and proper for the full accommodation of the business of the road. 3d. That the party of the second part will, at their own cost, employ during the continuance of the said demised term, all such superintendents and employés as shall by them be deemed necessary to maintain, work, use and operate said railroad hereby demised, and shall and will return and deliver up the said railroad at the expiration of the hereby demised term in good order and repair. 4th. That the party of the second part, and its assigns, shall at all times during the hereby demised term have the full and exclusive right to manage and control the said demised railroad and premises, and to regulate and determine the rates of tolls, freight and charges of all the transportations over the whole or any part of the demised railroad and premises; and to charge and collect the same and appropriate the same to their own use, and shall have, use and exercise and enjoy all the rights, power and authority over the railroad aforesaid, and all powers and privileges now possessed or which may hereafter be acquired by the party of the first part, relating to the said road as herein provided, which can or may be lawfully exercised and enjoyed on and about said demised railroad and premises. 5th. It is further agreed that the party of the second part shall pay the party of the first part an annual rental for the use of said road of thirty-five (35) per cent of the gross earnings thereof for the first ten years from the acceptance of said road, and for the next twenty years following the first ten, or for the period of any renewal, an annual rental of thirty-three and a third (33⅓) per cent of the gross earnings of said road; and in determining the gross earnings all receipts for passengers or freights over said road shall be pro-rated with the Pacific Railroad solely with reference to distance of carriage upon the respective roads. 6th. Whereas the St. Louis, Lawrence & Denver Railroad is about to issue its first mortgage bonds upon the said railroad for the sum of one million dollars, bearing interest at the rate of six per cent. per annum, in gold, payable semi-annually at the National Bank of Commerce in the city of New York; and whereas, the said company has agreed to pay all taxes upon the said road and to fence the same and make other expenditures hereinafter particularly specified; now, for the purpose of providing a fund sufficient to meet the said interest (and to make the other payments referred to) the Pacific Railroad Company covenants and agrees to pay the said Bank of Commerce, on account of said rental, to the credit of the interest account of said St. Louis, Lawrence & Denver Railroad, the sum of sixty thousand dollars in gold annually, thirty thousand ($30,000) of which shall be paid on or before the first day of May, and thirty thousand ($30,000) on or before the first day of November in each year after the delivery to and acceptance of said road by the Pacific Railroad Company, under the terms of this lease, and has also agreed to pay said company the sum of fifteen thousand dollars ($15,000) in current money, payable one-half on the first day of January and the remainder on the first day of July at the office of the Pacific Railroad Company. making in all the sum of seventy-five thousand dollars ($75,-000), to be paid annually during the entire period of the lease. And it is expressly covenanted and agreed, that if the said sum of sixty thousand dollars ($60,000) in gold, with the premium thereon, and fifteen thousand dollars ($15,000) in currency, should amount to more than the amount to the credit of said St. Louis, Lawrence & Denver Railroad Company, as rental upon the per centage of gross receipts hereinbefore specified, the excess paid by said Pacific Railroad Company, with the premiums paid for gold, shall be charged to said St. Louis, Lawrence & Denver Railroad Company, and shall bear interest at the rate of ten (10) per cent per annum, until such per centage of gross receipts shall itself be sufficient to provide for the annual payments of said sum of sixty thousand dollars in gold and fifteen thousand dollars in currency, and thereafter any surplus to the credit of said St. Louis, Lawrence & Denver Railroad Company over and above the amount so required shall be retained by the said Pacific Railroad Company (of Missouri) until the amounts so advanced, with premiums and interest at the rate of ten per cent, shall have been fully reimbursed to said company. And it is expressly stipulated and agreed, that until all amounts so advanced by said Pacific Railroad Company shall be fully reimbursed and paid, said Pacific Railroad Company shall have a lien upon the road and franchises of said St. Louis, Lawrence & Denver Railroad Company to the amount of such

advance and interest, and no incumbrance, mortgage or lien of any kind or character, except the said mortgage for one million dollars, shall be placed upon said road without the consent of the board of directors of the Pacific Railroad for the time being, until all the amounts so due shall be fully satisfied and paid. It is expressly agreed, that for any fractional portion of a period of six months elasping between the acceptance of said road and the maturity of the first interest payment thereafter on the first mortgage bonds, said Pacific Railroad Company shall pay only a pro rata share in accordance with the time so elapsing. 9th. And it is further agreed and understood, that the said party of the first part shall pay all taxes and assessments at any time hereafter imposed under the authority of the United States, state, county or city laws upon the whole or any part of said road, its buildings or appurtenances hereby demised, and also all taxes which may hereafter be imposed by authority of law, either federal or state, upon the capital stock and the dividends thereon, or upon their bonds or interest thereon, which said party of the first part are or may be liable to pay, and also the interest and principal of any bonds or other debts incurred by the party of the first part, when the same shall mature, and in case of the neglect or refusal of said party of the first part to pay said taxes and liabilities which may be or can be collected by levy on said road, then the said party of the second part shall be authorized to pay said taxes and demands, and shall deduct the amount so paid for taxes, etc., from said semi-annual payments in currency, as they may become due, and the receipts for said payments, so made by said party of the second part shall be taken by said party of the first part on account of such payment to the extent aforesaid. * * * 12th. It is further agreed and understood between the parties, that the party of the first part shall fence the said road with a good and sufficient fence of such height as may be required by the laws of Kansas and Missouri; and one third part of said fence shall be erected within two years, one third part additional within four years, and the whole within six years from the date of acceptance of said road by the party of the second part. The general superintendent of the said second party shall designate the parts of said road which shall be first fenced. But if the said Pacific Railroad Company shall deem the erection of such fence necessary before the period named, said company shall have the right to erect the same and charge the cost thereof, with interest at the rate of ten per cent per annum, to said party of the first part, to be reimbursed out of its proportion of gross receipts as provided in section sixth (6)."

After setting out in full the sixth section of the contract as above given, the petition alleges that it was intended by defendant, by means of the several parts of said agreement of lease, to create a security for the payment of the interest of said bonds as the same became due for the whole period of the existence of said bonds and said lease, and to induce persons desiring to invest their money to purchase said bonds on such security offered by defendant, and that in pursuance of said intention and design on the part of said defendant, plaintiff says that said St. Louis, Lawrence & Denver Railroad Company did, afterwards. to-wit, on the first day of May, 1871, by its president, George W. Dietzler, attested by its secretary, B. W. Woodward, and under its corporate seal, all then and there duly authorized, make, execute and offer for sale, for money, its one thousand certain writings obligatory or bonds, each for the sum of one thousand dollars, payable twenty-five years after its date, and each of which was in words and figures following, to-wit:

"St. Louis, Lawrence & Denver Railroad Company of the State of Kansas. First Mortgage Bond. No. ——. $1000. Interest six per cent per annum, payable semi-annually, at the National Bank of Commerce, in the city of New York, principal and interest payable in gold, secured by mortgage of road and payment of interest guaranteed by the Pacific Railroad of Missouri. Know all men by these presents, that the St. Louis, Lawrence & Denver Railroad Company acknowledges itself to be indebted to the holder of this bond in the sum of one thousand dollars, which said sum it promises twenty-five years after date hereof to pay to the bearer in gold, at the National Bank of Commerce, in the state and city of New York, negotiable and payable without defalcation or discount, with interest from date at the rate of six per cent per annum, payable semi-annually on the first days of May and November of each year, in gold, at the aforesaid bank, on the presentation of the interest coupons hereto attached. This bond is issued to aid in the completion of the St. Louis, Lawrence & Denver Railroad and is secured by a first deed of trust on said road, duly executed and stamped in accordance with the revenue laws of the United States and recorded in the recorder's office for the counties of Douglas and Johnson, Kansas, and Cass county, Missouri, in and through which said railroad passes. Said deed of trust is on said railroad and all its franchises, and is executed to the Union Trust Company of New York, as trustee, and the payment of interest is secured by a contract of lease with the Pacific Railroad of Missouri, dated June 14th, 1870. In testimony whereof, the said St. Louis, Lawrence & Denver Railroad Company has caused this bond to be signed by its presi-

dent and attested by its secretary, and its corporate seal affixed, and the interest coupons attached to be signed by its president. Done at the city of Lawrence in the county of Douglas, state of Kansas, this first day of May, A. D. 1871. Geo. W. Dietzler, President. Attest: B. W. Woodward, Secretary. [Seal.]"

And to each of which said bonds there were then and there annexed fifty instruments in writing, or coupons, signed by said president for said company, in words and figures following, to-wit:

"$30. Kansas. $30. The St. Louis, Lawrence & Denver Railroad Co. will pay to bearer, on the first day of ——, 18—, thirty dollars in gold, at the National Bank of Commerce, in the city of New York, on the presentation of this coupon, being interest due on bond No. —. Geo. W. Dietzler, President."

Said coupons being payable respectively on the first day of May and first day of November in each of said twenty-five years, from 1871 to 1896.

And plaintiff says that after said agreement by and between said St. Louis, Lawrence & Denver Railroad Company, and said Pacific Railroad (of Missouri), as hereinbefore set forth, was made, and at the time said bonds and coupons were made and executed by said St. Louis, Lawrence & Denver Railroad Company, and when the same were being offered for sale in the market, and to induce purchasers to buy the same, it was, with the knowledge and approval, and by request of said defendant, expressly stated on the face of said several bonds, that the payment of interest thereon was guaranteed by said defendant. And plaintiff further says, that by the express terms of sale of said bonds, it was further, with the express knowledge and approval, and at request of said defendant, to induce the purchase of said bonds by whomsoever might desire the same, expressly stated therein that the payment of interest thereon was secured by a contract of lease with said defendant, dated June 14th, 1870 (meaning the lease and contract aforesaid). And plaintiff further says, that afterwards, to-wit, on the 22d day of December, A. D. 1871, the defendant, by its president, did, under and in pursuance of said contract and lease, receive and accept the said St. Louis, Lawrence & Denver Railroad, and did then and there enter upon said lease. And plaintiff further says, that thereupon, by and with the approval, and at the request of said defendant, and with the said facts and inducement expressed on the face of said bonds, said St. Louis, Lawrence & Denver Railroad Company did proceed to offer and negotiate said bonds for sale, and by means of the premises plaintiff was induced to purchase seventy-three of said bonds, relying upon the said promises and agreements of said defendant to pay said sums of mon-

ey, to meet the semi-annual installments of interest thereon. And plaintiff further says, that afterwards, and as the same became due, the defendant, with full knowledge of all the facts aforesaid, did promptly pay at the place where the same were made payable, the several installments of interest on said bonds, as the same became due, up to the installment due and payable on the first day of November, A. D. 1873, which defendant then and there failed to pay. Plaintiff says that by means of the premises, the defendant did promise and agree, to and with each and every of the bearers of said several bonds and coupons, as the same became due and were negotiated and sold, as aforesaid, and for the purpose of providing a fund sufficient to meet said interest, to pay the said Bank of Commerce on account of said rental, to the credit of said interest account, the sum of sixty thousand dollars, in gold, annually, thirty thousand dollars of which should be paid on or before the first day of May, and thirty thousand dollars on or before the first day of November, in each year, after the delivery and acceptance of said road by defendant, for the entire period of thirty years, unless said bonds were sooner paid. And plaintiff says, that the defendant, by means of the premises, did agree and guarantee, to and with plaintiff, when he became the holder and bearer of each of said bonds, that the interest thereon, as the same became due, was collectible, and that the defendant would pay the same, in gold, at said Bank of Commerce, for the use of plaintiff. And plaintiff says, the defendant has not performed its said agreement and promise to pay said interest that became due on November 1st, 1873, and that there is $30 now due on each of said several bonds, owned by plaintiff, and of which he is the bearer, and said last named company promised to pay to bearer on the first day of November, 1873, in gold at the National Bank of Commerce, in the city of New York, on the presentation of said coupon, being interest due on said bond No. —, etc. And plaintiff further says that before the negotiation and sale of said bonds and coupons to plaintiff, and to induce plaintiff to purchase the same, the said defendant, then and there, a corporation duly authorized thereunto, did, for value received, promise to pay said Bank of Commerce, for the use of the bearer of said coupon, the amount thereof, on said first day of November, A. D. 1873, in gold; and plaintiff relying on defendant's said promise, did purchase same. That plaintiff was, at the date last aforesaid, and is now, the bearer of said coupon, that defendant did not pay the amount of same to said bank, and though often requested, hath failed, and does still fail and refuse to pay the same, or any part, to said bank for use of plaintiff. Wherefore, plaintiff asks judgment for said sum

of thirty dollars, with interest from November 1st, 1873, in gold, with ten per cent damages.

The defendant filed an answer in denial and also setting up new matter. To this new matter the plaintiff demurred, on the ground that it constituted no defence to the causes of action in the petition. The portion of the answer demurred to is as follows:

"And for further answer in the premises and to each and every count in said petition, defendant alleges that the said St. Louis. Lawrence & Denver Railroad Company did not perform the stipulations and covenants on its part contained in said contract. Said St. Louis, Lawrence & Denver Railroad Company did not build said road in the manner and of the character and with the equipments and appurtenances required by said contract; said St. Louis, Lawrence & Denver Railroad Company did not furnish or provide or pay for, when payment was required, a large part of the right of way and land required for said road and the station houses and other buildings on the line of said road, but a large portion thereof still remains unpaid for, whereby defendant has been subjected to many vexatious law suits, and has been obliged to pay out large sums of money. on account of said failure on the part of said St. Louis, Lawrence & Denver Railroad Company, which has never been repaid defendant, but still remains due and unpaid. Defendant further alleges, that said St. Louis, Lawrence & Denver Railroad Company failed to pay for a large amount of work done and material used and furnished for use, in and about the location and construction of said railroad and its appurtenances, as required by said contract, whereby defendant has been subjected to many vexatious law suits, and has been obliged to pay out large sums of money on account of said failure of the St. Louis, Lawrence & Denver Railroad Company, which money has never been repaid, but still remains due and unpaid. Defendant further alleges, that said St. Louis, Lawrence & Denver Railroad Company failed, neglected and refused to build the fence which by said contract it agreed to build. although the general superintendent of the defendant. has designated the parts of said road which should be fenced, and said fence has never yet been built, although, by the terms of said contract, said fence should have been built long ago, and by reason of said failure, defendant has been obliged to pay out large sums of money for cattle killed and other damages, for which sums it has never been reimbursed. And said St. Louis, Lawrence & Denver Railroad Company has failed to pay any of the taxes levied by the states of Missouri and Kansas, and the several counties and other municipal corporations therein, upon said railroad and its appurtenances, and other property demised by said lease, although by said contract the said St. Louis, Lawrence & Denver Railroad Company agreed to pay the same, and by such failures, defendant has been forced to expend large sums of money, which have never been reimbursed. And the amounts paid out by defendant by reason of the several defaults and omissions of the St. Louis, Lawrence & Denver Railroad Company, hereinbefore set out, far exceeded, each year, the sum of fifteen thousand dollars. Defendant further alleges, that the thirty five per cent of the gross earnings of said St. Louis, Lawrence & Denver Railroad Company never, in any year, equalled fifty thousand dollars a year, but in truth did not amount to that sum. And each and all of said defaults and neglects on the part of said St. Louis, Lawrence & Denver Railroad Company existed long prior to November 1st, 1873, and remain in that condition until this day. And said St. Louis, Lawrence & Denver Railroad Company being unable to reimburse defendant for the sums expended by it on account of the several neglects and defaults on the part of said St. Louis, Lawrence & Denver Railroad Company, above set out. and being unable to give defendant any security or assurance that it would do so, the defendant and the said St. Louis, Lawrence & Denver Railroad Company, mutually agreed to, and did, on the ——— day of December, 1873, rescind, cancel and annul said contract set out in the petition made as therein stated, and all other contracts supplementary and amendatory thereto, and the said property by said contract demised was then delivered to the said St. Louis, Lawrence & Denver Railroad Company, and the said St. Louis, Lawrence & Denver Railroad Company did then and there, for a valuable consideration, release and absolve defendant from the performance of any and all the covenants in said lease and contract contained."

Noble & Orrick, for plaintiff.

James Baker and J. N. Litton, for defendant.

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge. On June 14th, 1870. the defendant made a contract with the St. Louis, Lawrence & Denver Railroad Company, to lease its road for thirty years. This "lease and contract" is under the seal of the two companies. It appears from the instrument that the road thus leased was then located, but was thereafter to be constructed by the lessor. The defendant agreed to operate the road during the whole of the demised term and to keep the same in use and repair. The defendant was to pay to the lessor (the Lawrence Company) "as an annual rental for the use of said road thirty-five per cent of the gross earnings thereof for the first ten years, and thirty-three and one-third per cent for the next twenty years." Then follows the sixth section of the contract, which recites that the Law-

rence Company is about to issue $1,000,000 first mortgage six per cent gold bonds, payable at the Bank of Commerce, New York, and that that company had agreed to pay all taxes upon its road and to fence the same, and concludes thus: "Now, for the purpose of providing a fund sufficient to meet said interest (and to make the other payments referred to), the Pacific Railroad Company covenants and agrees to pay the said Bank of Commerce on account of said rental, to the credit of the interest account of said St. Louis, Lawrence & Denver Railroad, the sum of $60,000 in gold annually, $30,000 of which shall be paid on or before the 1st day of May, and $30,000 on or before the 1st day of November in each year, and has also agreed to pay said company $15,000 in current money each year, making in all $75,000 to be paid annually during the entire period of the lease." This was to be paid irrespective of what at the stipulated rate the actual rental would amount to. Any excess was to be charged by the defendant to the Lawrence Company, and was made a lien upon its road and franchises.

The bonds subsequently issued by the Lawrence Company, as to amount, rate of interest, place and times of payment, corresponded with these provisions in the contract between the two companies, and contained on their face this statement: "Payment of interest guaranteed by the Pacific Railroad of Missouri;" also the statement: "The payment of interest is secured by a contract of lease with the Pacific Railroad of Missouri, dated June 14th, 1870." These bonds were sold in the market, and the plaintiff, as he alleges, became the owner of seventy-three of them, on which interest was paid out of the fund provided for in the lease until November 1st, 1873, when the payment of interest ceased, and in December, 1873, as the answer alleges, the contract and lease of June 14th, 1870, was rescinded and the property surrendered by the defendant to the Lawrence Company.

The plaintiff alleges that to induce persons to buy the bonds, the present defendant requested the statements to be made therein that the payment of interest was guaranteed by it and secured by the contract of lease of June 14th, 1870; that it approved of this statement in the bonds, and afterwards, with full knowledge of these facts, and that the purchase of bonds had been induced thereby, paid to the Bank of Commerce the several installments of interest on said bonds up to that which fell due November 1st, 1873.

Assuming these allegations of the petition to be true, our opinion is that they constitute a good cause of action in favor of the plaintiff, and one which may be enforced in an action at law directly against the defendant. The petition does not count upon the promise of the defendant in the sixth article of the contract to provide annually a fund of $60,-000 with which to pay that amount of interest on the bonds, as the sole ground of the defendant's liability to the bondholders, but states this promise on the part of the defendant as only one of the elements of such liability.

There is much conflict in the judgment of the courts as to the right of third persons for whose benefit stipulations are made in a contract between other persons, to enforce those stipulations against the promissor. And the general rule undoubtedly is, that one who is a stranger to the contract, that is not a party to it, and from whom the consideration for the promise does not move, and to whom the promise is not made, cannot enforce it by action, although he would be benefited if the promise were kept and be injured if broken; and the difficulty has frequently been considered to be increased where the contract is under seal. The adjudications on the subject are collected and examined by the editors of the American Leading Cases (volume 2, pp. 164, 337), and it is not proposed here to review them, nor to determine whether the present case, if the plaintiff relied alone upon the promises of the defendant in the lease and contract of June 14th, 1870, would fall within the general principle. In form the promise of the defendant in the sixth article of that lease is to the Lawrence Company; and, in form, at least, that company, and not the bondholders, furnished the consideration for the promise of the defendant to pay annually on account of the interest on the proposed loan, the sixty thousand dollars. In reality, however, it is probable the bondholders under the mortgage furnished to the Lawrence Company the means to build the road, the use of which under the lease constituted the consideration of the defendant's promise. But it is not necessary to determine whether upon the lease alone the plaintiff would have any action, because, as above observed, he does not bring his suit upon this theory. This claim of the plaintiff is, that the defendant being interested in the construction and completion of the Lawrence road, and having become bound to the Lawrence Company to pay it $60,000 in gold, annually, to enable it to negotiate its bonds and raise money to build the road, and to keep the road when built out of the way of the foreclosure of the mortgage securing the bonds (the Lawrence road having no resources except its earnings or rental), the defendant caused or consented to the representations contained in the bonds, that it had guaranteed and would pay the interest on them annually during the entire term of its lease, which was longer than the period when the bonds by their terms fell due. If this allegation can be proved, our opinion is that the defendant is bound to make good the guaranty, and that this guaranty attaches to and follows the bonds and is available to every holder of them who relied upon it. In this view the promise by the defendant is a

direct one to whoever becomes the holder of bonds on the faith of it, and, although the facts are different, the case falls within the principle of morality, fair dealing, and enlightened justice asserted by the supreme court of the United States in the cases of Lawrason v. Mason, 3 Cranch [7 U. S.] 492, annotated 2 Am. Lead. Cas. 298; Woodruff v. Trapnall, 10 How. [51 U. S.] 206; Curran v. Arkansas, 15 How. [56 U. S.] 304; Furman v. Nichols, 8 Wall. [75 U. S.] 50. If the foregoing is a correct view of the legal relations and rights of the parties, it follows that the contract between the defendant and the plaintiff was complete when the plaintiff bought the bonds upon the strength of the promise or representation which the defendant authorized (as it is alleged) to be made, and that the plaintiff's rights are in no wise dependent upon whether the Lawrence Company kept its contract in respect to taxes, fences, &c., and could not be affected by a subsequent rescission of the contract of June 14th, 1870, and the surrender of the road by the defendant to the Lawrence Company. For these reasons the demurrer to the affirmative defence in the answer is sustained.

Judgment accordingly.

NOTE. As to the enforcement of promises made by one person to another for the benefit of a third, the latest cases in New York are Claflin v. Ostrom, 54 N. Y. 581, decided by the commissioners of appeals in January. 1874. and Merrill v. Green, 55 N. Y. 270, decided by the court of appeals in December, 1853, and which seem to be conflicting.